# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| NEXUSCARD, INC. <br> *Plaintiff*, <br><br> v. <br><br> BROOKSHIRE GROCERY COMPANY, <br> *Defendant*. | § § § § § § § § | Case No. 2:15-cv-961-JRG <br><br> (Lead Case) |
| THE KROGER CO. | § § § | Case No. 2:15-cv-968-JRG <br> (Member Case) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to declare this case exceptional and as a result award attorney's fees (Dkt. No. 76, "the Motion") as filed by Defendant Kroger Corporation ("Kroger") pursuant to 35 U.S.C. § 285. The Court, having considered the Motion, is of the opinion that the motion should be **DENIED**.

## I.  BACKGROUND

On June 5, 2015, NexusCard brought this action against Kroger and three other defendants alleging infringement of U.S. Patent No. 5,924,080 ("the '080 Patent") titled "Computerized discount redemption system." NexusCard is a non-practicing entity based in Lake Forest, California and the owner by assignment of the '080 patent. The '080 patent generally relates to a membership discount program. Claim 11 is representative of all claims of the '080 patent, which recites:

> 11. The method of processing and applying merchandise discounts to a consumer's purchases by providing a computerized membership system, said membership including a plurality of consumer members, a plurality of point of purchase merchant members, a plurality of manufacturer members, and a centralized system provider, said membership system having:

a point of purchase merchant member computer terminal and computer and a centralized provider's computer, said provider's computer having a database for the storage and retrieval of information, said database storing information regarding point of purchase merchant members, manufacturer members, and consumer members, in predetermined files, at least some of said information being entered into the system at the time of a member establishing membership in said system and

communication means, said communications means providing real time communication between said member merchant's computer terminals and said provider's computer,

comprising the steps of:

a. providing consumer members with individual identification codes, said identification codes accessing said databases;

b. storing said consumer member identification codes on said provider's computer in a consumer database;

c. providing each consumer member with a membership ID, said membership ID having memory storage means, said memory storage means containing at least said consumer identification code;

d. storing merchandise information provided by a manufacturer member in a manufacturer member database in said provider's, said merchandise information including at least a merchandise identification code and the discount on predetermined merchandise,

e. displaying to consumers indicia, said indicia identifying point of purchase merchandise subject to a price discount,

f. transporting, by said consumer, consumer selected discounted and nondiscounted merchandise a purchase location at said merchant member to form a collection of transported merchandise, each of said transported merchandise having a merchandise identification code,

g. scanning merchandise identification codes of each of said transported merchandise, at said communication means,

h. scanning said consumer ID,

i. uploading said scanned consumer identification code, from said merchant member, through said communication means to said provider's computer,

j. comparing said consumer identification code with consumer identification codes stored in said provider's computer and verifying said consumer's membership,

k. uploading said merchandise identification code for each of said scanned merchandise to said merchant member's computer,

l. comparing at said merchant's computer, said merchandise identification code for consumer selected merchandise with the identification codes of said discounted merchandise,

m. computing the discounts on said merchandise subject to a price discount,

n. uploading to said provider's computer merchandise codes for merchandise subject to a price discount,

o. downloading from said provider's computer to said merchant's computer through said merchant communication means, discounts on said merchandise subject to a price discount,

p. printing at said merchant member's computer terminal a sales slip for said member consumer including the discounts for said merchandise subject to a price discount,

q. sorting and storing in said provider's databases said downloaded data on said consumer and said merchandise purchased by said a member consumer from a member merchant, and

r. storing merchant member sales data on said merchant member computer, wherein said provider maintains and processes, in real time, discounts provided by manufacturer members to member consumers without said member merchant being required to process said discounts or member consumers being required to present coupons or file rebates to obtain said discounts.

*NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462, 463–64 (E.D. Tex. 2016).

On July, 2, 2015, Kroger filed a Motion to Dismiss asserting that each claim of the asserted patent was invalid under 35 U.S.C. § 101 for claiming non-patentable subject matter. ("Kroger's 101 Motion"). On April 6, 2016, prior to claim construction, the Court granted Kroger's 101 Motion. The Court held that under the two-step *Mayo/Alice* framework, claim 11 lacked subject matter eligibility because the claim (1) is directed to the abstract idea on a membership discount program on a network and (2) lacks an inventive step. *See id.* at 467–68. NexusCard has appealed this Court's ruling to the Federal Circuit which is currently pending.

On April 27. 2016, Kroger timely filed the present Motion arguing that the Court should deem this case exceptional under 35 U.S.C. § 285.

## II. APPLICABLE LAW

A court in exceptional cases may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health and Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v.*

*Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[T]he determination whether a case is 'exceptional' under § 285 is a matter of discretion."). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The movant must show exceptionality by a preponderance of the evidence. *Site Update Sols., LLC v. CBS Corp.*, 639 Fed. App'x 634, 636 (Fed. Cir. 2016)

## III. DISCUSSION

Kroger argues that this case should be found "exceptional" under § 285 for two reasons: (1) NexusCard's case was objectively unreasonable; and (2) NexusCard litigated the case in an unreasonable manner. The Court disagrees.

### 1. Objective Reasonableness

Kroger argues that the claims of the '080 patent were facially invalid for being directed at unpatentable subject matter under § 101. According to Kroger, NexusCard's case was objectively unreasonable from the start. The crux of Kroger's argument is that the invalidated claims in this case are similar to the claims in *eDekka* which this Court characterized as "demonstrably weak on [their] face." *eDekka, LLC v. 3Balls.com, Inc.*, No. 2:15-cv-00541-JRG, 2015 WL 9225038, at *2 (Dec. 17, 2015).

There is no precise test to determine the substantive strength of a litigant's position and when such position is objectively unreasonable. "A party's position on issues of law ultimately need not be correct for them to not 'stand out,' or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane Fitness*, 134 S. Ct. at 1756). Even if a party's position is ultimately meritless, the question is whether it was "so meritless as to 'stand out' from the norm and, thus, be exceptional." *Id.* (quoting *Octane Fitness*, 134 S. Ct. at

1756) "Since *Octane*, district courts tend to award fees based on substantive weakness when a party fails to adduce any evidence to support its position or the party advances a position conclusively contradicted by the evidence." *RLIS, Inc. v. Cerner Corp.*, 2015 WL 5178072, at *1 (S.D. Tex. Sept. 3, 2015) (Costa, J., sitting by designation).

As a threshold matter, the mere fact that the Court resolved the case at the pleadings stage, prior to claim construction, "is not necessarily a judgment on the relative strength or weakness of the patentee's litigation position." *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) ("Nowhere does *Octane* suggest a shift to the 'English Rule' whereby a party who concludes a case on a pleading motion invariably gets his or her fees.") Further, Kroger's comparison of claim 11 to the invalid claim in *eDekka* is misplaced. Not only could the claims of the '674 patent at issue in *eDekka* be performed easily by a human, but as counsel for *eDekka* acknowledged, the asserted claims did not even expressly require a computer to be performed. *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 5579840, at *4 (E.D. Tex. Sept. 21, 2015) ("The '674 Patent generically refers to a 'data structure,' but does not require such structure to be limited to a computer. The claims are not tied to a generic computer, let alone a specialized one."); *eDekka LLC v. 3balls.com, Inc.*, 2015 WL 9225038, at *2. By contrast, neither is true here. The method recited in claim 11 cannot be performed easily by a human, and the claim recites many computer components, albeit generic ones that fail to confer patent eligibility to the claim.

Unlike the claim in *eDekka*, claim 11 of the '080 patent recites computer elements and not simply the use of a computer. Such elements do not, in and of themselves, make claim 11 patent eligible, but they do distinguish claim 11 from the manifestly abstract claim at issue in *eDekka*. Kroger has based its Motion on the premise that this case is compellingly similar to

*eDekka*. This comparison is not persuasive. The fact that the claims in *eDekka* did not even recite computer components made the substantive weakness of eDekka's position "stand out" from other cases involving early § 101 challenges. Kroger has made no similar showing here. Absent such a showing, in light of the presumption of validity and the ever-evolving landscape of § 101 jurisprudence, the Court does not find that substantive weakness of NexusCard's litigation position "stands out" simply because the Court was able to conclude that the claims of the asserted patent covered ineligible subject matter early in the litigation and prior to claim construction.

### 2. Manner In Which The Case Was Litigated

Kroger also argues that NexusCard employed a litigation strategy designed to extract nuisance settlements and avoid addressing the § 101 issue until after it had extracted cost-of-defense settlements. The Court does not find Kroger's argument to be persuasive.

The Court has wide discretion in determining whether a party litigated a case in an unreasonable manner or in bad faith. Kroger argues that NexusCard's refusal to allow the § 101 determination to be decided before the parties and the Court expended significant resources in litigation contributed to the alleged exceptionality of this case. The Court is not persuaded that such refusal makes this case exceptional. As a general matter, it is not the Court's practice to stay litigation pending a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, No. 4:16-cv-350, 2016 WL 3747222, at *3 n.1 (E.D. Tex. July 13, 2016) ("As a general matter, the Court will not stay discovery because there is a pending motion to dismiss."). Indeed, if that were the case, Rule 12 motions would provide a defendant with a license to delay litigation irrespective of the merits to such motions. Put simply, Kroger's requested stay was not relief this Court grants in the ordinary course.

Accordingly, NexusCard's opposition to such a stay was neither exceptional nor unreasonable. The same can be said of its refusal to agree to an unopposed stay in light of Kroger's CBMR *petition*. Kroger has put forward no evidence or argument to suggest why, in this regard, this case is different from all other cases, which is its burden. Accordingly, the Court does not find that NexusCard's refusal to agree to such a stay was unreasonable.

Kroger's continuing comparison to *eDekka* misses the mark. In *eDekka*, the Plaintiff filed suit against over 200 defendants and made settlement offers as low as $3,000—an offer dwarfed by the cost of briefing and presenting oral argument on a § 101 motion. Equally important, many of these settlement offers were timed in a suspect way; the only reasonable inference the Court could draw from such facts was that eDekka had no confidence in its position and brought its case only to extract nuisance settlements. *See eDekka*, 2015 WL 9225038, at *4. By contrast here, as Kroger admits, NexusCard's litigation volume was "a fraction" of what was at issue in *eDekka*. (Dkt. No. 76 at 11.)  NexusCard's settlement offers may have been below the cost of litigating this case through claim construction, but they were not so low or timed in such a way as to suggest that NexusCard only brought this litigation to extract nuisance settlements. NexusCard explains that it offered discounted settlements to account for legal uncertainties, notably the ever-evolving jurisprudence surrounding § 101. Whether true or not, Kroger has not marshalled specific facts to adequately refute NexusCard's explanation. *See, e.g.*, *eDekka*, 2015 WL 9225038, at *4 ("[O]n September 8, 2015, just two days before the September 10, 2015 § 101 hearing, counsel for *eDekka* contacted numerous defendants with offers to settle their cases for three-thousand dollars each. These offers represent extraordinarily low amounts. Such offers remained open until they were withdrawn during the evening of September 9, 2015."); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 333 (S.D.N.Y.

2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016) ("Lumen's attorney represented to FTB's attorney that O'Connor had committed a hate crime under Ninth Circuit law by using the term 'patent troll.' FTB's attorney contends that Lumen's attorney threatened to pursue criminal charges unless FTB apologized, financially compensated Shapiro and Lumen's attorney, and settled the litigation by paying Lumen a licensing fee in connection with the '073 Patent. FTB's attorney claims that Lumen's attorney stated that the offer was only good until the close of business that day and that FTB should 'act quickly.'"). Accordingly, absent such facts, Kroger has not persuaded the Court that NexusCard has engaged in a pattern of litigation abuses or that it filed the present suit intending to extract a nuisance settlement. Kroger has failed to carry its burden in regard to this Motion.

## IV. CONCLUSION

The Court observes that the practice of seeking exceptional case status under § 285 is fast becoming commonplace. In fact, it is well on its way becoming routine practice in any case where one party prevails over the other on the merits. The Court is persuaded that such was never the intention or the effect of the Supreme Court's decision in *Octane Fitness*. The burgeoning practice of seeking § 285 status whenever a party prevails raises real risks to the public's access to justice. As this Court observed in *eDekka*, "[a] finding of exceptionality is something that this Court arrives at reluctantly, lest we unintentionally narrow the public's access to the courts by chilling future decisions to seek redress for a case in which success is not guaranteed." *eDekka*, 2015 WL 9225038 at *5.

For the reasons stated above, the Court does not find this case exceptional. Accordingly, Kroger's Motion (Dkt. No. 76) is **DENIED**.

The Court **ORDERS** that Kroger, being the prevailing party, shall recover its costs. The Clerk is instructed enter the Agreed Bill of Costs and that NexusCard pay the amount

identified in the Bill of Costs as follows: Kroger shall recover its costs in the amount of $328.49 from NexusCard. (Dkt. No. 75.)

**So ORDERED and SIGNED this 23rd day of November, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE